Geoffrey S. Kercsmar (#020528)
Gregory B. Collins (#023158)
Jenessa G. B. Coccaro (#027090)
KERCSMAR & FELTUS PLLC
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Fax: (480) 421-1002
gsk@kflawaz.com
gbc@kflawaz.com
jbc@kflawaz.com

Attorneys for Plaintiff ThermoLife International, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International, LLC, an Arizona limited liability company, | No. |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| Gaspari Nutrition, Inc., a New Jersey Corporation, Richard Gaspari, a New Jersey resident, Daniel Pierce, a New Jersey resident, and Bruce Kneller, a New Jersey resident, | (Jury Trial Demanded) |
| Defendants. | |

Plaintiff ThermoLife International, LLC, for its complaint against defendants Gaspari Nutrition, Inc., Richard Gaspari, Daniel Pierce, and Bruce Kneller alleges upon personal knowledge with respect to itself and its own acts, and upon information and belief with respect to all other matters, as follows:

## NATURE OF ACTION

1.     Plaintiff ThermoLife International, LLC ("ThermoLife") brings claims for false advertising, common law unfair competition, tortious interference with existing and prospective contract expectancy, and unjust enrichment against its competitor Gaspari

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Nutrition, Inc. ("Gaspari").    ThermoLife brings these claims because Gaspari has improperly competed with ThermoLife in the dietary supplement market.

2.    ThermoLife also brings claims for violations of A.R.S. § 13-2301 *et seq.* against Richard Gaspari (Gaspari's President), Daniel Pierce (a Gaspari formulator) and Bruce Kneller (a Gaspari formulator).  Operating as an enterprise within the meaning of A.R.S. § 13-2301(D)(2), Richard Gaspari, Daniel Pierce and Bruce Kneller conspired to falsely market Gaspari products as dietary supplements that contain steroids and/or illegal materials.    Richard Gaspari, Daniel Pierce and Bruce Kneller perpetrated fraudulent activities on more than one victim, over a period of years, while following the same *modus operandi*.

3.    Competition in the supplement industry is fierce, with each company seeking to discover and market the next breakthrough product that will help build muscle and/or decrease fat.  Faced with stiff competition and the ever increasing desire of the market for the next great muscle building supplement, several dietary supplement makers have sought to boost sales by illegally including in their products materials that are not compliant with the federal Dietary Supplement Health and Education Act of 1994 ("DSHEA").  For instance, as reported by the Washington Post in 2005, Gaspari has marketed and sold a product that contained anabolic steroids.

4.    Despite increasing scrutiny on the dietary supplement market, Gaspari continues to flood the market with products that are not DSHEA compliant.   These products improperly compete directly with ThermoLife's DSHEA compliant products. The FDA, after official action, has determined that Gaspari's products Novedex XT, Halodrol Liquiqels, and Halodrol MT contain materials classified as steroids and/or illegal supplements.   Prior to the FDA's office action, Gaspari falsely claimed these products

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

were DSHEA compliant, because in the words of a Gaspari representative, if Gaspari's products were not compliant, "[they] wouldn't be carried in major retailers nor would many of [Gaspari's] international distributors carry [Gaspari products]."

5.     Gaspari has also sought to directly deceive customers and harm its competitor, ThermoLife, by falsely claiming that Gaspari products contain raw materials in doses proven by scientific studies to produce results.  Gaspari advertises one of its top selling products, SuperPump 250, as including an ingredient called "Turkesterone."  But independent scientific testing revealed no Turkesterone in SuperPump 250.  This is not surprising, because ThermoLife has an exclusive agreement with the only known commercial supplier of Turkesterone.

6.     In addition to falsely advertising its products and improperly marketing products as supplements that Gaspari knows or should have known are not DSHEA compliant, Gaspari has—in actions motivated solely by ill-will and spite—sought to injure ThermoLife.  Gaspari routinely disparages ThermoLife and its President, Ron Kramer, in the bodybuilding community, a major consumer of dietary supplements.  In September 2009, Gaspari also improperly demanded that ThermoLife not be allowed to exhibit at the preeminent bodybuilding competition and trade show, Mr. Olympia.

7.     ThermoLife brings this action to enjoin Gaspari from continuing to falsely market its products.  ThermoLife also seeks to recover for the competitive injury that Gaspari's false advertising, unfair competition and tortious interference have caused to ThermoLife's business.  Gaspari can no longer profit from its false and misleading statements and any profit earned from these actions must be disgorged.

## PARTIES, JURISDICTION AND VENUE

8.     Plaintiff ThermoLife is an Arizona limited liability company.  ThermoLife's

principal place of business is 3914 E. Chandler Blvd, Phoenix, Arizona 85048.

9.    Upon information and belief, defendant Gaspari is a New Jersey corporation.  Gaspari's principal place of business is 575 Prospect Street, Suite 230, Lakewood, New Jersey.

10.    Gaspari ships and sells products nationwide, including in Arizona.

11.    Gaspari advertises its products nationwide, including in Arizona.

12.    Richard Gaspari is the President of Gaspari Nutrition.  Upon information and belief, Richard Gaspari is a resident of the state of New Jersey.

13.    Daniel Pierce is a sales representative for Gaspari Nutrition.  Upon information and belief, Daniel Pierce is a resident of the state of New York.

14.    Bruce Kneller is a formulator for Gaspari Nutrition.  Upon information and belief, Mr. Kneller is a resident of the state of New Jersey.

15.    The Court has jurisdiction over Plaintiff's federal claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, and 1338(a).  Jurisdiction over the state law claims is based on 28 U.S.C. §§ 1338(b), and 1367.

16.    This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Gaspari, Richard Gaspari, Daniel Pierce, and Bruce Kneller are diverse in citizenship from ThermoLife and the amount in controversy exceeds $75,000, exclusive of interests and costs.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b)-(c), because a substantial part of the events or omissions giving rise to ThermoLife's claims occurred in this District.  Venue with respect to Gaspari is also proper in this district because Gaspari is subject to personal jurisdiction in this district.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## FACTUAL ALLEGATIONS

**A.    ThermoLife**

18.    Ron Kramer ("Kramer") founded ThermoLife in 1998.  Prior to founding ThermoLife, Kramer was a gym owner who had competed in bodybuilding and later promoted professional bodybuilding competitions for the International Federation of Bodybuilders.

19.    Between 1994 and 1997, Kramer opened and operated a Gold's Gym in Santa Cruz, California.

20.    During his time as a bodybuilder, promoter, and gym owner, Kramer discovered that many supplements failed to meet any quality control standards.  Often supplements are spiked with hidden ingredients and labeled incorrectly.

21.    At the time ThermoLife was established, few supplements were clinically researched or field tested.  Even today, relatively few supplements have been proven to work as advertised.

22.    In 1998, Kramer founded ThermoLife in order to provide the public with quality proven supplements.  ThermoLife is committed to selling only the purest, most effective and innovative products.

23.    By relying on supposedly proprietary formulas, supplement companies often hide the ingredients in their products from consumers.  Unlike other supplement companies, ThermoLife develops unique and novel products and formulas that it fully discloses to the public.  In this way, ThermoLife allows consumers to know exactly what products and raw materials they consume.

24.     ThermoLife has been awarded patents on thirteen individual compounds. These patents protect ThermoLife's innovative and proven products from being copied by ThermoLife's competitors.

25.     By fully disclosing its formulas and relying on scientifically proven and protected formulas and ingredients, ThermoLife has taken a lead role in ending the deceptive business practices that have plagued the supplement industry.

26.     ThermoLife's President, Kramer, has taken a lead role in exposing some of the deceptive business practices used by other supplement companies.  ThermoLife consistently analyzes and tests other companies' supplements.  When independent third party lab analysis reveals that the supplements tested are not as advertised, Kramer often posts this information on bodybuilding message boards to inform the unsuspecting consumer of these frauds/inaccuracies.

27.     Kramer is known on the internet by the name "Truth Speaker."

28.     The FDA regulates dietary supplements under the DSHEA.  ThermoLife's supplements are DSHEA compliant.

29.     ThermoLife's supplements are sold nationwide on the internet and in vitamin and dietary supplement stores such as The Vitamin Shoppe.

**B.     Gaspari**

30.     Upon information and belief, Gaspari started doing business in 2000.

31.     Rich Gaspari is the face of Gaspari.  A former competitive bodybuilder, Rich Gaspari markets Gaspari's products at trade shows, through YouTube posts, on internet message boards, and on the internet.

32.     Gaspari also relies on its sales representatives to market its products.

33.     Gaspari   sales   representatives   are   frequent   contributors   to   the

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

BodyBuilding.com internet message boards and forums.  The BodyBuilding.com internet message boards and forums are relied on by ThermoLife's and Gaspari's consumers to provide information about dietary supplements.  These message boards and forums are frequently visited by competitive and amateur bodybuilders in order to research dietary supplements.

34.    Gaspari's products are also marketed and sold nationwide on the internet and in vitamin and dietary supplement stores, such as The Vitamin Shoppe.

35.    Gaspari has a long history or marketing products as dietary supplements that are not DSHEA compliant.

36.    On November 30, 2005, the Washington Post published an article titled: "Steroids Detected in Dietary Tablets."  According to the article, the Washington Post obtained and tested Gaspari's Halodrol-50 product.  The tests conducted by the University of California Los Angeles revealed that Halodrol-50 contained a steroid that "closely resembles Oral-Turnabol, the principal steroid used to fuel East Germany's secret, systematic sports doping program."

37.    It has also been reported that other Gaspari products contained anabolic steroids, including, but not limited to, Gaspari's: Methyl 1D (methyl-dienolone) Oxavar(methyl-hydroxynandrolone), Orastan A (unmethylated, etherified furaza) Orastan E (unmethylated etherified winstrol), Halodrol-50 (the diol of turinabol), and M-One-T (M1T).

**C.    Gaspari's Novedex XT Product**

38.    Until October 2010, Gaspari sold and marketed a product called Novedex XT.

39.    In Gaspari's description of Novedex XT, Gaspari described the product as a

7

"testosterone booster." Gaspari further stated that studies have shown "no adverse advents or side effects associated with the product." Upon information and belief, this statement was false and/or misleading to consumers.

40.    Gaspari also falsely claimed, "The active ingredients in Novedex XT have been conclusively shown to be inherently 100% non-anabolic and 100% non-androngenic by nature-the active ingredients are naturally occurring and are found in normal foodstuffs."

41.    Gaspari also falsely claimed that its Novedex XT product was "in full compliance with the United States 1995 [sic] DSHEA Act regarding food supplements."

42.    In addition, Gaspari's sales representative have frequently commented on internet message boards stating that Novedex XT was DSHEA compliant.

43.     In commenting on an article posted on healthknowledge.com regarding China's recent decision to bar importation of certain supplements, a Gaspari representative, Daniel Pierce ("Pierce"), who frequently uses the screen name "deserusan," falsely stated, "I'm not worried about … DHEA and ATD [which is found in Novedex XT] because those can be found elsewhere and are DSHEA compliant."

44.    Similarly, Pierce in a post on BodyBuliding.com falsely stated, "Novedex isn't a great mass inducer but still effective. There is only so much you can do with a DSHEA compliant OTC [over the counter] supplement."

45.    In another BodyBuilding.com post, when asked about whether Novedex XT was DSHEA compliant, Pierce falsely stated, "If [Novedex XT wasn't [DSHEA compliant], it wouldn't be carried in major retailers nor would many of our intentional distributors carry it."

46.    In another post on BodyBuilding.com Pierce was asked whether the

materials in Novedex XT were DSHEA compliant. Pierce falsely responded, "Actually they are DSHEA compliant. I can't say the same for all the products mentioned here."

47. Gaspari's formulator, Bruce Kneller (who goes by many different internet screen names including "Kohen Gadol"), has also posted false information regarding Novedex XT on internet websites, including BodyBuilding.com. In explaining why Novedex XT was DSHEA compliant, Mr. Kneller falsely stated, "For those who are going to whine about 3,6,17-androst-4-ene-trione, … ATD is found in bovine intestines which are used as sausage casings and is [], [DSHEA] exempt."

48. Upon information and belief, Gaspari has made other false statements that Novedex XT is DSHEA compliant. Upon information and belief, these statements were made to distributors of supplements and supplement stores.

49. Upon information and belief, Gaspari's false statements resulted in the supplement stores selling Novedex XT when they otherwise would not have sold this product.

50. Directly contrary to Gaspari's statements regarding Novedex XT, on September 9, 2010, the FDA issued a formal action establishing that Novedex XT was not DSHEA compliant. This office action was updated on October 8, 2010. The FDA's office action is titled "Aromatase Inhibitors in Products Marketed as Dietary Supplements: Recall including …. Novedex XT." A true and accurate copy of the FDA's office action is attached hereto as Exhibit 1.

51. The FDA's office action stated, "Products marketed as dietary supplements contain aromatase inhibitors, commonly known as 'ATD.' Adverse events associated with the use of aromatase inhibitors following: decreased rate of bone maturation and growth, decreased sperm production, infertility, aggressive behavior, adrenal

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

insufficiency, kidney failure, and liver dysfunction. Consumers with liver, kidney, adrenal, or prostate abnormalities are at higher risk for developing adverse events."

52.    The FDA also stated, "The FDA concludes that products containing aromatase inhibitors have a reasonable probability of resulting in permanent impairment of a body structure or function in at risk consumers."

53.    The FDA's statements regarding ATD, which is found in Novedex XT, demonstrate that Gaspari's statements regarding Novedex XT were materially false.

54.    As the FDA concluded, ATD, and by implication Novedex XT, is not DSHEA compliant.

55.    As the FDA concluded, ATD, and by implication Novedex XT, has several potentially serious side effects.

56.    Even though the FDA ordered a recall of the Novedex XT in its September 9, 2010 office action, Gaspari did not announce the recall of this product until October 7, 2010.  A true and accurate copy of Gaspari's October 7, 2010 recall is attached as Exhibit 2.

57.    Gaspari's Novedex XT product improperly competed directly with ThermoLife's products T-BOL, E-BOL, Tribosten, and Ecdysten.

58.    In particular, both Novedex XT and T-BOL are testosterone boosters, but T-BOL is DSHEA compliant.

59.    As a result of Gaspari's false and/or misleading statements, ThermoLife has been injured, either by direct diversion of sales from itself to Gaspari or by a lessening of the goodwill associated with its products.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

**D.    Gaspari's Halodrol Liquigels and Halodrol MT Products**

    **i.    Gaspari's Marketing of Halodrol Liquigels and Halodrol MT as DSHEA Approved Supplements**

60.    Until September 2009, Gaspari sold and marketed a product called Halodrol Liquigels.

61.    In September 2009, Gaspari replaced Halodrol Liquigels with Halodrol MT.

62.    In the bodybuilding community, Halodrol Liquigels and Halodrol MT were known as "synthetic steroids."

63.    After Halodrol MT began selling and while Halodrol Liquigels was still being sold, the New York Police Department ("NYPD") banned the use of the Halodrol products by its police officers.

64.    In response to the NYPD's ban, Rich Gaspari released a statement from Gaspari.  In that statement, Gaspari falsely stated, "All of Gaspari Nutrition's products are labeled in accordance with federal and state law."  Continuing, Rich Gaspari also falsely stated, "[Gaspari's] products contain only safe healthful dietary ingredients, and do not contain any banned or illegal ingredients."

65.    In addition to Rich Gaspari's statements, Gaspari's formulator, Bruce Kneller, also defended Halodrol Liquigels and Halodrol MT.  He falsely stated that "because it contains better, non-ATD/3-OHAT new AI that is DSHEA compliant (the entire formula is DSHEA compliant, this one will be in chain stores, we know this already)."

66.    Like Gaspari's formulator, Gaspari sales representatives have also stated that Halodrol Liquigels were DSHEA compliant.  In a post on BodyBuilding.com, a Gaspari sales representative stated, "The current Halodrol Liquigels are a reformulated

product that is DSHEA compliant and non-prohormonal in nature. It does not require a PCT and does provide very nice results. Just keep in mind that it's not a prohormone though, and as such, expectations should be kept reasonable."

67.    Upon information and belief, Gaspari has made other false statements that Halodrol Liquigels and Halodrol MT were DSHEA compliant.  Upon information and belief, these statements were made to distributors of supplements and supplement stores.

68.    Upon information and belief, Gaspari's false statements resulted in supplement stores selling Halodrol Liquigels and Halodrol MT when they otherwise would not have sold this product.

69.    Directly contrary to Gaspari's statements regarding Halodrol Liquigels and Halodrol MT, on October 6, 2010, the FDA issued a formal enforcement report that included Gaspari's Halodrol products.  A true and accurate copy of the October 6, 2010 enforcement report is attached as Exhibit 3.

70.    The October 6, 2010 enforcement report states that the Halodrol products were, "Marketed Without An Approved NDA/ANDA: These products are being recalled because they are marketed as dietary supplements, but have been found to contain steroids or steroid-like substances, making them unapproved new drugs."

71.    In addition to the FDA's October 6, 2010 enforcement report, on January 15, 2010, MuscleMaster.com conducted a voluntary recall of Gaspari's Halodrol Liquigels.  A true and accurate copy of MuscleMaster.com's recall notice is attached as Exhibit 4.  The notice states, "FDA informed MuscleMaster.com that it believes that the Recalled Products contain ingredients that are steroids."

72.    Gaspari's Halodrol Liquigels and Halodrol MT products improperly competed directly with ThermoLife's products T-BOL, E-BOL, Tribosten, and Ecdysten.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

12

73.    In particular, Halodrol Liquigels, Halodrol MT and T-BOL are testosterone boosters, but T-BOL is DSHEA compliant.

74.    As a result of Gaspari's false and/or misleading statements, ThermoLife has been injured, either by direct diversion of sales from itself to Gaspari or by a lessening of the goodwill associated with its products.

**ii.    Gaspari's Marketing of Halodrol Liquigels and Halodrol MT as Containing 95% 3,4-Divanillytetrahydrofuran**

75.    In addition to the above false statement that Gaspari made with respect to its Halodrol Liquigels and Halodrol MT products, Gaspari also advertised and labeled these products as including 95% 3,4-divanillytetrahydrofuran.

76.    In 2009, many dietary supplements were advertised to contain 95% 3,4-divanillytetrahydrofuran.

77.    In 2009, ThermoLife purchased purported 95% 3,4-divanillytetrahydrofuran for use in ThermoLife's products.

78.    ThermoLife was suspicious of the material and had the material tested by the leading analytical testing laboratory, ChromaDex.

79.    ChromaDex is well-known in the supplement industry.    Manufactures routinely submit products to ChromaDex for testing and safety certification.    ChromaDex is nationally recognized as one of the best analytical testing laboratories in the United States.    ChromaDex is a publically traded company and is registered with the New York Stock Exchange.

80.    ChromaDex testing determined that the purported 95% 3,4-divanillytetrahydrofuran was not what it purported to be.

81.    As ChromaDex's testing results revealed, although it was possible for a material that met the reference standard for 95% 3,4-divanillytetrahydrofuran to be

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

13

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

produced, any material that actually met this standard would be cost prohibitive and is not commercially available.

82.     ThermoLife published these results on the internet to make all supplement companies aware that the material that was marketed and sold as 95% 3,4-divanillytetrahydrofuran was not 95% 3,4-divanillytetrahydrofuran.

83.     Despite ThermoLife's research and publication of ChromaDex's results, Gaspari continued to advertise and sell its Halodrol Liquigels and Halodrol MT products as containing 95% 3,4-divanillytetrahydrofuran.

84.     As a result of Gaspari's false and/or misleading statements, ThermoLife has been injured, either by direct diversion of sales from itself to Gaspari or by a lessening of the goodwill associated with its products.

**E.     Gaspari's SuperPump 250**

85.     SuperPump 250 is one of Gaspari's top selling supplements.

86.     According to its label, SuperPump 250 contains Turkesterone.

87.     Gaspari also advertises and markets its SuperPump 250 product indicating that it contains Turkesterone.

88.     Upon information and belief, Gaspari has falsely indicated to distributors and dietary supplement companies that SuperPump 250 contains Turkesterone.

89.     ThermoLife applied for and received the definitive reference standard for Turkesterone.

90.     Reference Standards are highly characterized specimens of drug substances, excipients, impurities, degradation products, dietary supplements, compendial reagents and performance calibrators.  Reference standards are used as a measurement base for similar substances.

14

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

91.    ThermoLife purchased SuperPump 250 online and had the product shipped directly to ChromaDex for independent testing.

92.    ChromaDex determined that SuperPump 250 does not contain a detectable amount of Turkesterone.

93.    ChromaDex's results were not surprising to ThermoLife.  ThermoLife is the market leader in the use of Turkesterone in dietary supplements.  ThermoLife has entered into an exclusive distribution agreement with the only company known to produce a useable amount of Turkesterone for use in dietary supplements.  All commercially usable Turkesterone is manufactured in Uzbekistan and the Uzbekistan government closely monitors the exportation and sale of its Turkesterone.

94.    When confronted with the results of ChromaDex's research, Gaspari responded on the BodyBuilding.com message board.  In a post that included many false and defamatory statements relating to ThermoLife and its President, Kramer, Gaspari explained that ChromaDex's test could only detect Turkesterone in an amount greater than 80 parts per million.  According to Rich Gaspari, since Gaspari's product contained 1mg of 2% Turkesterone material, ChromaDex's test could not detect the small amount of Turkesterone in SuperPump 250.

95.    Gaspari's statements regarding the amount of Turkesterone in SuperPump 250 are demonstrably false because ChromaDex determined that SuperPump 250 contains no Turkesterone.

96.    Moreover, to the extent Turkesterone is included in SuperPump 250 in the amounts identified by Gaspari, the amount of Turkesterone in SuperPump 250 is equivalent to breaking one grain of salt into 100 pieces and then adding two of those pieces per serving of SuperPump 250.

97.    Gaspari's concession that SuperPump 250 includes such a minute amount of Turkesterone directly conflicts with Gaspari's advertising.  In a marketing video that can be found on YouTube.com, among other websites, titled "The State of The Pre-Workout Category by Rich Gaspari," Gaspari markets all of its products claiming that, "Gaspari doesn't rely on cheap stimulant laden formulas that are clearly crafted to claim they contain high concentrations of beneficial ingredients."  In the same video, Rich Gaspari also claims that Gaspari uses its ingredients, "in doses validated by those [clinical] studies."

98.    Accordingly, to the extent Gaspari is correct as to the amount of Turkesterone in SuperPump 250, Gaspari has falsely advertised that, unlike other companies, Gaspari uses only doses of raw materials in its products that have been proven to have a benefit.

99.    At a minimum, Gaspari's statements regarding the doses it uses in products mislead consumers.

100.    Further, to the extent to the extent Gaspari is correct as to the amount of Turkesterone in SuperPump 250, Gaspari has misled customers as to the amount of Turkesterone in Super Pump 250.

101.    As a result of Gaspari's false and/or misleading statements, ThermoLife has been injured, either by direct diversion of sales from itself to Gaspari or by a lessening of the goodwill associated with its products.

**F.    Gaspari's Actions at Mr. Olympia**

102.    In addition to improperly competing with ThermoLife through false advertising and selling illegal supplements, motivated solely by ill-will and spite Gaspari has also sought to eliminate ThermoLife's ability to compete with Gaspari at trade shows.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

16

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

103.    The preeminent event for bodybuilding is the Mr. Olympia competition.

104.    In connection with the Mr. Olympia competition, four days of separate events are held where the body building community gathers.

105.    Each year, the competition includes the Olympia Weekend Expo for dietary supplement companies to sell, market, and distribute their products to the leading companies and individuals in the supplement industry.

106.    In 2009, the Olympia Weekend Expo was held on September 25-26, 2009 at the Las Vegas Convention Center.

107.    ThermoLife sought to participate in the Olympia Weekend Expo and contacted the event to purchase three booths to display and market ThermoLife's products.

108.    When Gaspari learned that ThermoLife planned to attend the event, motivated solely by ill-will and spite, Gaspari contacted the organizers of the event, American Media, Inc.  Gaspari had a pre-existing relationship with American Media, Inc. because Gaspari had purchased advertising in American Media, Inc.'s many different magazine publications.

109.    Gaspari improperly demanded that American Media, Inc. not allow ThermoLife to exhibit at the Olympia Weekend Expo.

110.    Gaspari threatened to pull its advertising from American Media, Inc.'s publications if ThermoLife was allowed to attend the Olympia Weekend Expo.

111.    Acceding to Gaspari's threats and improper conduct, American Media, Inc. informed ThermoLife that it would not be allowed to attend the Olympia Weekend Expo.

112.    ThermoLife had already made arrangements to attend the event, including purchasing plan tickets, making hotel reservations and planning its exhibition for the

Olympia Weekend Expo. As a result of Gaspari's improper actions, ThermoLife suffered damages including the money that ThermoLife had already spent to exhibit during the Olympia Weekend Expo.

113. Additionally, Gaspari's actions caused ThermoLife to lose business opportunities. Upon information and belief, had ThermoLife been allowed to attend the Olympia Weekend Expo, it would have earned significant business and goodwill at the event.

114. Gaspari's actions as set forth above were intentional and outrageous. Punitive damages should therefore be awarded in an amount sufficient to punish Gaspari and to deter Gaspari and others similarly situated from engaging in similar conduct in the future.

## FIRST CLAIM FOR RELIEF

(False Advertising Under 15 U.S.C. § 1125(a)(1)(B)—Against Gaspari)

115. Plaintiff realleges and incorporates herein by reference each and every allegation of this Complaint as is fully set forth herein.

116. As alleged above, Gaspari has made false statements of fact in commercial advertisements about its products, including on its labels, in its internet marketing and in its sales presentations.

117. To the extent any statements made by Gaspari and alleged herein is not literally false, Gaspari has made statements that improperly mislead and/or deceive consumers.

118. Gaspari's statements actually deceived or have the tendency to deceive a substantial segment of its audience.

119. Gaspari's deception is material, in that it is likely to influence the

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

purchasing decision of the public for whom it was intended.

120.    Gaspari has caused the false statements alleged herein to enter interstate commerce.

121.    ThermoLife has been injured as a result of Gaspari's false statements, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with ThermoLife's products.

122.    ThermoLife has suffered a commercial injury based upon a misrepresentation about Gaspari's products.

123.    ThermoLife's injury is competitive, i.e., harmful to the ThermoLife's ability to compete with Gaspari.

124.    ThermoLife's Lanham Act False Advertising claim does not seek to enforce the DSHEA through private action.  Instead, the FDA has already declared that Gaspari's products are improperly marketed as dietary supplements and that those products include materials that are not properly sold as dietary supplements.  To the extent any claim ThermoLife has asserted mentions the DSHEA, ThermoLife seeks to hold Gaspari liable for the false statements it made related to DSHEA approval and hold Gaspari liable for the harm that Gaspari's improper actions have caused to ThermoLife.

125.    Gaspari's false statements cause irreparable harm to ThermoLife and ThermoLife's goodwill and business opportunities.

126.    Gaspari's false statements are still available on the internet and barring an order from this Court those statements will not be removed from the internet, permanent injunctive relief is necessary to prevent further irreparable harm to ThermoLife's business and goodwill.  To prevent further immediate and irreparable harm to ThermoLife a permanent injunction should enter requiring Gaspari and those acting in concert with it to

remove from the internet any false information Gaspari has published.

127.    Gaspari's conduct as alleged is willful and exceptional, such that ThermoLife is entitled to an award of treble damages and its attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Common Law Unfair Competition—Against Gaspari)

128.    Plaintiff realleges and incorporates herein by reference each and every allegation of this Complaint as is fully set forth herein.

129.    Gaspari's conduct constitutes unfair competition under the common law of the state of Arizona.

130.    Gaspari has unfairly competed with ThermoLife under the common law of the state of Arizona by, among other actions:

    a.  Marketing and selling products that compete with ThermoLife's products as dietary supplements, when Gaspari's products are definitively not dietary supplements;

    b.  Using false and misleading statements to market its products in direct competition with ThermoLife;

    c.  Demanding that ThermoLife not exhibit at the Olympia Weekend Expo in an action motivated solely by ill-will and spite towards ThermoLife.

131.    Gaspari has also unfairly competed with ThermoLife under the common law of the state of Arizona by employing a marketing strategy in which Gaspari consistently and repeatedly markets its products as DSHEA compliant when in fact the products are not compliant with the DSHEA.  As part of this strategy, when any Gaspari product is found by the FDA as non-compliant with the DSHEA, Gaspari voluntarily recalls the product while at the same time developing and then marketing a replacement product that

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Gaspari advertises as somehow materially different from its predecessor and, therefore, DSHEA compliant. By employing this unfair and improper marketing of its products as DSHEA compliant, Gaspari's products are sold at chain stores and in other venues where non-DSHEA compliant products are not sold. These products compete directly with ThermoLife's DSHEA compliant products. Upon information and belief, as a marketing strategy Gaspari's statements regarding DSHEA compliance allow Gaspari to compete with ThermoLife when its products otherwise would not.

132. Gaspari's marketing of it Halodrol line of products demonstrates the unfair competition that arises from Gaspari's marketing strategy:

a. Gaspari developed and marketed Halodrol-50 claiming DSHEA compliance.

b. Gaspari's claim of DSHEA compliance allowed Halodrol-50 to obtain placement in marketing channels as a result of Gaspari's claim of DSHEA compliance.

c. The FDA determined that Gaspari's Halodrol-50 was not DSHEA compliant.

d. Gaspari then recalled Halodrol-50.

e. At the same time Gaspari recalled Halodrol-50, Gaspari developed and marketed a Halodrol-50 replacement, Halodrol Liquigels.

f. Gaspari asserted that its Halodrol Liquigels were materially different than Halodrol-50 and, therefore, Halodrol Liquigels were DSHEA compliant.

g. Gaspari's claim that Halodrol Liquigels were DSHEA complaint allowed Halodrol Liquigels to obtain placement in marketing channels that a non-compliant product could not have obtained.

21

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

h.  The FDA next determined that Gaspari's Halodrol Liquigels were, like Halodrol-50, not DSHEA compliant.

i.  Gaspari then recalled Halodrol Liquigels, like Halodrol-50 before it.

j.  At the same time Gaspari recalled Halodrol Liquigels, Gaspari developed and marketed a Halodrol Liquigels replacement, Halodrol MT.

k.  Gaspari asserted that its Halodrol MT was materially different than Halodrol Liquigels and Halodrol-50 before it and, therefore, Halodrol MT was DSHEA compliant.

l.  Gaspari's claim that Halodrol MT was DSHEA complaint allowed Halodrol MT to obtain placement in marketing channels that a non-compliant product could not have obtained (just as Halodrol-50 and Halodrol Liquigels had before Halodrol MT).

m.  The FDA next determined that Gaspari's Halodrol MT was, like Halodrol-50 and Halodrol Liquigels, not DSHEA compliant.

n.  Gaspari then recalled Halodrol MT, like Halodrol-50 and Halodrol Liquigels before it.

o.  Thus, as a direct and proximate consequence of Gaspari's actions above (Gaspari's unfair marketing strategy), Gaspari was able to compete with ThermoLife's DSHEA compliant products in the same marketing channels for years, despite that, but for Gaspari's unfair marketing strategy—Gaspari would not have been able to compete with ThermoLife during this time.

133.  Gaspari's unfair competition with ThermoLife has caused harm to ThermoLife.

134.  Gaspari's actions were committed fraudulently and maliciously and in

conscious disregard of ThermoLife's rights, with evil mind and intent to injure ThermoLife.

### THIRD CLAIM FOR RELIEF

(Violation of A.R.S. §§ 13-2301*et seq.*—Against Richard Gaspari, Daniel Pierce, and Bruce Kneller)

135.    Plaintiff realleges and incorporates herein by reference each and every allegation of this Complaint as if fully set forth herein.

136.    ThermoLife is a "person" under A.R.S. §§ 13-2391 et seq.

137.    Richard Gaspari, Daniel Pierce, and Bruce Kneller are "persons" under A.R.S. §§ 13-2391 et seq.

138.    Gaspari is a corporation or association organized and existing under the laws of New Jersey and constitutes an "enterprise" within the meaning of A.R.S. §§ 13-2391 et seq.

139.    Upon information and belief, Richard Gaspari, Daniel Pierce, and Bruce Kneller all have managerial authority within Gaspari.

140.    The enterprise was engaged in and currently is engaged in activities affecting interstate commerce at all times relevant hereto.

141.    Richard Gaspari, Daniel Pierce, and Bruce Kneller conspired among themselves within the meaning of A.R.S. §§ 13-2391 et seq. to violate, and have violated, A.R.S. § 13-2301, including but not limited to A.R.S. § 13-2301(D)(4)(xv),(xx); that is, Richard Gaspari, Daniel Pierce, and Bruce Kneller conspired among themselves to use and invest, directly or indirectly, the income, or the proceeds of income of Gaspari to assert false claims and/or conduct a scheme or artifice to defraud, and have conducted said scheme as intended.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

142.    Richard Gaspari's, Daniel Pierce's, and Bruce Kneller's conduct as alleged above constitutes a pattern of activity under A.R.S. §§ 13-2314.04 and 13-2391 et seq.  In furtherance of the enterprise and as part of the scheme to defraud, Richard Gaspari, Dan Pierce, and Bruce Kneller have each made at least two false statements regarding Gaspari and its products within the past five years.

143.    As detailed above, Richard Gaspari, Daniel Pierce, and Bruce Kneller have knowingly, intentionally and falsely stated: (1) that Gaspari's products are DSHEA compliant; (2) that Gaspari's products contain raw materials in them that are not found in Gaspari's products  (including Turkesterone and 95% 3,4-divanillyetetrahydrofuran); and (3) that anyone who alleges otherwise is not truthful, including ThermoLife.

144.    These knowing and intentional misrepresentations were reasonably calculated to deceive persons of ordinary prudence and comprehension, i.e., potential customers of both Gaspari and ThermoLife.

145.    Richard Gaspari's, Daniel Pierce's, and Bruce Kneller's false statements were each related to each other.  The statements each had the same or similar purpose (increasing the sales of Gaspari and harming ThermoLife's sales), victims (potential customers, the public, and ThermoLife), and methods of commission (advertising statements through various media, internet postings, and public statements), as well as other similar characteristics.

146.    The purpose of the scheme was to increase Gaspari's sales and to harm ThermoLife's sales, and therefore obtain money and property for the participants by false or fraudulent pretenses, representations and promises.

147.    As alleged above, the false statements are continuous, ongoing and pose a threat of continued unlawful activity.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

148.    As a direct and proximate cause of Richard Gaspari's, Daniel Pierce's, and Bruce Kneller's actions, ThermoLife has sustained damages in the form of lost sales and lost goodwill.

149.    ThermoLife's damages were reasonably foreseeable to Richard Gaspari, Daniel Pierce, and Bruce Kneller.

### FOURTH CLAIM FOR RELIEF

(Tortious Interference with Business and Business Expectancy)

1.    Plaintiff realleges and incorporates herein by reference each and every allegation of this Complaint as is fully set forth herein.

2.    ThermoLife has a prospective business relationship and a reasonable expectation of a business or economic relationship.

3.    Defendant's actions were made with full knowledge and awareness of ThermoLife's prospective and expected business or economic relationship.

4.    Gaspari has improperly interfered with ThermoLife's prospective and expected business or economic relationship, causing injury to ThermoLife.

5.    Gaspari has committed its acts against ThermoLife, as alleged herein, fraudulently and maliciously and in conscious disregard of ThermoLife's rights, with evil mind and intent to injure ThermoLife.

### FIFTH CLAIM FOR RELIEF

(Unjust Enrichment)

6.    Plaintiff realleges and incorporates herein by reference each and every allegation of this Complaint as is fully set forth herein.

7.    Gaspari has been unjustly enriched through its actions, including (but not limited to): (1) marketing and selling products that compete with ThermoLife's products

as dietary supplements, when Gaspari's products are definitively not dietary supplements; and (2) using false and misleading statements to market its products in direct competition with ThermoLife.

8.      Gaspari's actions have directly caused ThermoLife an impoverishment.

9.      There is no justification for this enrichment or impoverishment.

10.     ThermoLife is entitled to restitution in an amount equal to the amounts Gaspari has been unjustly enriched and ThermoLife impoverished.

## JURY TRIAL DEMAND

11.     Plaintiff requests a trial by jury on all aspects of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, ThermoLife demands judgment against defendant Gaspari as follows:

A.      For an award disgorging any and all monies earned by Gaspari in connection with the sale of its products: (1) Novedex XT; (2) Halodrol Liquigels; (3) Halodrol MT; and (4) SuperPump 250.  This amount shall be proven at trial.  Upon information and belief this amount exceeds $24,000,000.00.

B.      For an award of compensatory and/or restitutionary damages in favor of ThermoLife in an amount to be proven at trial.

C.      For an award of treble damages under 15 U.S.C. § 1117 and 15 U.S.C. § 1125(a).

D.      For an award of ThermoLife's attorneys' fees under 15 U.S.C. § 1117.

E.      Ordering the payment of up to treble damages to those persons injured by a pattern of racketeering activity or a violation of A.R.S. § 13-2312 involving a pattern of racketeering activity;

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

F.   For prejudgment interest on any liquidated sum determined to be due Plaintiff;

G.   For post-judgment interest on any judgment;

H.   For their reasonable attorneys' fees, costs and expenses incurred herein by Plaintiff as permitted by law.

I.   For punitive damages in an amount sufficient to deter Gaspari from future wrongful and outrageous conduct;

J.   An Order permanently enjoining, Gaspari and all those persons in active concert or participation with them, from making false statements on the internet their products and an order requiring Gaspari and those acting in concert or participation with them to remove the false statements from the internet regarding Gaspari's products.

K.   For such other and further relief as the Court deems just and proper.

DATED this 26th day of May, 2011.

KERCSMAR & FELTUS PLLC


By *s/ Gregory B. Collins*
Geoffrey S. Kercsmar
Gregory B. Collins
Jenessa G. B. Coccaro
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona  85250
Attorneys for Plaintiff ThermoLife International, LLC

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

### A.R.S. § 13-2314.04(o) VERIFICATION

I, Ron Kramer, ThermoLife International, LLC's President, declare as follows:

As required by Arizona Revised Statute § 13-2314.04(o), (p), I certify that I have carefully read this pleading and, based on a reasonable inquiry, I believe all of the following:

1. The pleading is well grounded in fact.

2. The pleading is warranted by existing law or there is a good faith argument for the extension, modification or reversal of existing law.

3. The pleading is not made for any bad faith, vexatious, wanton, improper or oppressive reason, including to harass, to cause unnecessary delay, to impose a needless increase in the cost of litigation or to force an unjust settlement through the serious character of the averment.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed May 26, 2011.

Ron Kramer
President
ThermoLife International, LLC

28