**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Gaspari Nutrition, Inc.,<br><br>Defendant. | No. CV 11-01056-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant's Motion to Dismiss Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, and 11 of Plaintiff's First Amended Complaint (Doc. 39). The Motion will be denied in part and granted in part for the reasons stated below.

**I.     BACKGROUND FACTS**

Plaintiff ThermoLife International, LLC ("ThermoLife") and Defendant Gaspari Nutrition, Inc. ("Gaspari") are both suppliers of dietary supplements targeted at competitive and amateur bodybuilders. Plaintiff claims that Gaspari falsely and misleadingly marketed and sold its products – specifically Defendant's Novedex XT, Halodrol Liquigels, Halodrol MT, and SuperPump 250 products – as safe, natural, complaint with the federal Dietary Supplement Health and Education Act of 1994 (DSHEA), and legal. Plaintiff makes nine separate claims of false advertising related to Defendant's claims that (1) it only sells legal products; (2) Novedex XT is DSHEA compliant; (3) Novedex XT is naturally occurring; (4) Novedex XT is safe; (5) Halodrol Liquigels and Halodrol MT are DSHEA complaint; (6) Halodrol Liquigels and Halodrol MT are safe; (7) Halodrol Liguigels and Halodrol MT contain 95% 3,4-

divanillytetrahydrofuran; (8) SuperPump 250 contains turkesterone; and (9) SuperPump 250 contains effective doses of turkesterone. In 2010, the FDA issued reports stating that Defendant's Novedex XT and Halodrol products were not DSHEA compliant. Plaintiff asserts that Defendant's products contain unsafe materials that are not naturally occurring, even though they were advertised as safe and naturally occurring.

In addition, Plaintiff asserts that it tested material that was marketed and sold as 95% 3,4-divanillytetrahydrofuran and concluded that commercial production of 95% 3,4-divanillytetrahydrofuran was cost prohibitive, and that therefore Defendant's Halodrol products could not actually contain 95% 3,4-divanillytetrahydrofuran. Plaintiff also asserts that it tested Defendant's SuperPump 250 product and did not detect the presence of any turkesterone. Even if SuperPump 250 were to contain some small trace of turkesterone, such trace amounts would not be an effective dose. Accordingly, Plaintiff asserts Defendant falsely advertised that the SuperPump 250 contained effective levels of Turkesterone. Plaintiff cites to various statements made by Defendant and its agents from 2006 until 2010 to support its claims.

Plaintiff manufactures dietary supplements that are in direct competition with Defendant's products, such as Plaintiff's T-BOL, E-BOL, Tribosten, and Ecdysten products, and that it sells and markets its products through the same stores and channels as Defendant. Plaintiff also claims to be the market leader in the use of turkesterone in dietary supplements and that it has an exclusive distribution agreement with the only company known to produce turkesterone for use in dietary supplements. Plaintiff asserts that it has been harmed by Defendant's false and misleading advertisements related to these products through a direct diversion of Plaintiff's sales and a lessening of the goodwill associated with its products.

Finally, Plaintiff alleges that Defendant improperly prevented Plaintiff from attending and exhibiting at the 2009 Mr. Olympia Weekend Expo bodybuilding competition and trade show by contacting American Media, Inc., the organizer of the event, and threatening to pull its advertising if ThermoLife was allowed to exhibit at the

event. Plaintiff claims Defendant's actions caused Plaintiff to lose business opportunities and unrecoupable costs it had expended in anticipation of attending the competition, such as plane tickets, hotel reservations, and planning its exhibition. Plaintiff claims Defendant intentionally and maliciously interfered with its contractual relationship with American Media, Inc., as well as preventing Plaintiff from earning business and goodwill at the event.

On December 16, 2011, the Court granted Defendant's motion to dismiss Plaintiff's original complaint and gave Plaintiff leave to file an amended complaint (Doc. 34), which Plaintiff filed on January 13, 2012 (Doc. 38). Plaintiff's amended complaint raises the above-discussed nine counts for false advertising under 15 U.S.C. § 1125(a)(1)(B) (hereinafter "the Lanham Act") related to statements made about Defendant's products, one count for common law unfair competition, and one count for tortious interference with business and business expectancy. Defendant now moves to dismiss the counts for false advertising and tortious interference.

## II.  LEGAL STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). However, the principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.* at 1949, 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

Defendant moves to dismiss Plaintiff's counts for false advertising under the Lanham Act for lack of standing and untimeliness. Defendant also moves to dismiss Plaintiff's count for tortious interference for failing to state sufficient facts to support that claim.

#### A. Standing Under the Lanham Act

Defendant claims that the first nine counts of Plaintiff's amended complaint fail because Plaintiff has not suffered a commercial injury based on Defendant's alleged misrepresentations and therefore does not have standing to bring a claim for false advertising under the Lanham Act. In order for a plaintiff to have standing to state a claim under the false advertising provisions of the Lanham Act, the plaintiff must allege "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Trafficschool.com, Inc. v. EDriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011) (quoting *Jack RussellTerrier Network of Northern Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005)). Defendant claims that because Plaintiff has not sufficiently alleged that any of its products compete directly with any of Defendant's products and that it has failed to allege anything beyond speculative injury, it does not have standing to bring these claims.[1]

The Ninth Circuit's recent opinion in *TrafficSchool* analyzed a standing challenge on the basis of an alleged lack of non-speculative, concrete injury and held that "a false

---

[1] Defendant also claims that to the extent Plaintiff purports to bring this action on behalf of consumers hurt by Defendant's false advertising, such injury is not actionable under Section 43(a) of the Lanham Act (Doc. 39 at 2). However, Plaintiff clearly alleges direct competitive harm to itself; it does not rely on injury to consumers as the basis for its false advertising claims.

advertising plaintiff need only believe that he is *likely* to be injured in order to bring a Lanham Act claim." 653 F.3d at 825. *TrafficSchool* makes clear that "when [a] plaintiff competes directly with [a] defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *Id.* at 827. Here, Plaintiff has specifically alleged that it is a direct competitor of Defendant and sells products that are competitive with Defendant's, including its T-BOL, E-BOL, Tribosten, and Ecdysten products.[2] Plaintiff has also alleged that it is the market leader in dietary supplements containing turkesterone and that Defendant's false advertising of its SuperPump 250 as containing effective doses of turkesterone, caused the SuperPump 250 to be in direct competition with Plaintiff's production of supplements containing turkesterone. Plaintiff is not simply alleging damage to the "industry overall resulting from" Defendant's false advertising or basing its claim on injury to misled consumers. *Skydive Arizona, Inc. v. Quattrochi*, 2006 WL 2460595, at *10 (D. Ariz. 2006). Rather, it is alleging direct competitive injury in the form of diversion of its own sales to Defendant's falsely advertised products.

While Plaintiff may not be able to muster specific and concrete non-speculative evidence of any injury to allow a damages recovery at a later stage, it has raised a presumption of injury – diversion of its own sales and goodwill to Defendant – sufficient to confer standing under the Lanham Act. Accordingly, Defendant's motion to dismiss Plaintiff's false advertising claims for lack of standing will be denied.

---

[2] Defendant's unsupported attempt in its reply (Doc. 44 at 2-3) to narrowly define the universe of "competitive" products to only products which are effectively identical and advertised as such is unavailing. Plaintiff's allegations that both Plaintiff and Defendant sold dietary supplements containing similar ingredients, serving similar purposes, and targeting a specific audience (here, competitive and amateur bodybuilders) is sufficient to allege direct competition and justify the presumption of competitive injury at the motion to dismiss stage.

- 5 -

### B.     Statute of Limitations Under the Lanham Act

Defendant also claims that Plaintiff's false advertising claims are barred by the statute of limitations. Defendant asserts the most analogous state statute of limitations for Plaintiff's claims is the one year statute of limitations under the Arizona Consumer Fraud Act, A.R.S. § 44-1522. Because Defendant's alleged false advertising occurred more than one year prior to the filing of Plaintiff's complaint on May 26, 2011, Defendant argues Plaintiff's Lanham Act claims are time barred. Plaintiff claims in response that, under *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002), laches, not the statute of limitations, applies to its claims. Plaintiff further asserts that the proper laches period is three years, and that it is inappropriate for Defendant to claim Plaintiff's claims are time barred at this stage in the proceedings since it was not previously raised and there is no showing that Defendant would suffer prejudice or that Plaintiff's delay in filing suit was unreasonable.

The issue before the court in *Jarrow* was "whether laches bars a manufacturer of nutritional supplements from suing its competitor for false advertising under the Lanham Act when the analogous state statute of limitations period [had] expired." *Jarrow*, 304 F.3d at 832. Defendant had moved for summary judgment "on the grounds that the statutes of limitation and laches bar[red] Jarrow's claims." *Id.* at 833. The district court had dismissed Jarrow's action as barred by laches but did not address the statute of limitations issue. *Id.* Therefore, the Ninth Circuit limited its review to the district court's determination of a laches bar to plaintiff's claims for false advertising. The court first noted that it was "well established that laches is a valid defense to Lanham Act claims, including those for false advertising." *Id.* at 835 (citations omitted). It went on to note that

> [W]hile laches and the statute of limitations are distinct defenses, a laches determination is made with reference to the limitations period for the analogous action at law. If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable. … However, if suit is filed

outside of the analogous limitations, courts often have presumed that laches is applicable.

*Id.*

In reviewing the application of laches to plaintiff's claims, the court noted that the "proper interplay between laches and the statute of limitations for Lanham Act claims is somewhat elusive." *Id.* at 836. The court acknowledged that Ninth Circuit cases had stated that the Lanham Act "borrows a state limitations period as a statute of limitations defense," but had "failed to consider whether Congress intended that laches, as opposed to the statute of limitations, be the sole timeliness defense available to [claims for false advertising under the Lanham Act]." *Id.* The court noted that the "equitable character" of false advertising claims under the Lanham Act might support the idea that only laches, and not a statute of limitations, be available as a time bar. However, although *Jarrow* engaged in this discussion, the court did not reach the issue of whether laches is the sole time bar to claims for false advertising under the Lanham Act. Rather, it simply conducted its laches analysis with reference to the most analogous state limitations period, which the parties agreed was California's three year limitations period for fraud. *Id.* at 838 (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996), which borrowed New York's fraud period for a Lanham Act false advertising claim). The court went on to hold that "in determining the presumption for laches, the limitations period [for a false advertising claim] runs from the time the plaintiff knew or should have known about his § 43(a) cause of action." *Id.* Because plaintiff was aware of defendant's false advertising more than three years prior to commencing the suit, the court applied a presumption of laches and analyzed whether defendant had shown that plaintiff's delay in filing was unreasonable and whether defendant would be prejudiced thereby, and ultimately concluded that plaintiff's suit was barred by laches. *Id.* at 838-41.

*Jarrow* therefore does not resolve the currently pending dispute as to whether the statute of limitations period, or only laches, is available as defense against Plaintiff's claims. Defendant contends that the statute of limitations can apply to bar Plaintiff's suit

and cites *Theodosakis v. Contract Pharmacal Corp.,* 172 Fed. Appx. 772, 2006 WL 7739222 (9th Cir. 2006), for the proposition that Arizona's one year limitations period, under the Arizona Consumer Fraud Act is the most analogous state statute of limitations. In that unpublished decision, the Ninth Circuit did not determine which state statute of limitations period is appropriate in analyzing claims under the Lanham Act; rather, it simply held that the district court "properly granted summary judgment against [plaintiff's] claims regardless of which Arizona limitations period applies (the one-year consumer fraud, trademark statute or the three-year fraud statute) because [plaintiff] knew about the potential infringement" more than three years prior to his filing suit. *Id.* at *1. Nor did *Theodosakis* resolve whether laches is the exclusive time bar defense to a Lanham Act claim; it simply noted that plaintiff made this argument, but that it was unnecessary to decide that question because the district court "did not abuse its discretion in finding that laches barred this action as well." Accordingly, *Theodosakis* is unhelpful in deciding the question before the Court. Defendant cites no further case law for its position that a one year limitations period should bar Plaintiff's claims here.

Plaintiff cites *Au-Tomotive Gold, Inc. v. Volkswagen of Amer., Inc.*, 603 F.3d 1133 (9th Cir. 2010), for the proposition that Arizona's three-year statute of limitations for fraud applies to provide the laches period for Lanham Act claims. Defendant contends that *Au-Tomotive Gold* is inapplicable here, as that case dealt with a Lanham Act claim for trademark infringement and dilution, not false advertising. However, *Au-Tomotive Gold* relied on *Jarrow*, a false advertising case, in its laches analysis, and made no distinction based on the underlying nature of plaintiff's claims. *Id.* at 1139-40. Further, it held without qualification that "Arizona's three-year statute of limitations for fraud applies to Lanham Act claims." *Id.* at 1140. The Court finds no persuasive reason to divert from this holding, and accordingly agrees that Arizona's three year fraud limitations period is the proper limitations period.

Whether the Court conducts a statute of limitations or a laches analysis is not controlled by any of the authority presented by the parties. However, the Court need not

decide this issue because Plaintiff's claims cannot be determined to be time-barred by either the statute of limitations or laches at this stage in the proceedings. While Plaintiff alleges Defendant made false statements as far back as 2007, it cannot be said from the pleadings that Plaintiff discovered then that the statements were false. Rather, a plausible inference is that Plaintiff did not know of the falsity of Defendant's statements until Defendant's products began being recalled (in 2009 and 2010) and Plaintiff independently conducted tests of Defendant's products to determine whether Defendant's advertising was false (in 2009), all of which falls within the three year limitations period. Defendant's motion to dismiss Plaintiff's Lanham Act claims on the basis that they are time-barred will therefore be denied.

### C. Tortious Interference With Business Expectancy

Plaintiff has raised a claim for tortious interference with business expectancy related to Defendant's alleged improper actions in preventing Plaintiff from exhibiting at the 2009 Mr. Olympia Weekend Expo. Plaintiff claims Defendant interfered with Plaintiff's contract with American Media, Inc., the company organizing the weekend expo, and Plaintiff's business expectancy with potential customers at the weekend expo. Defendant has moved to dismiss Plaintiff's claim for tortious interference with business expectancy with potential customers at the weekend expo because Plaintiff has not sufficiently alleged any specific party with which it expected to do business or identified any specific damages resulting from the alleged interference.[3]

To state a claim for tortious interference with business expectancy, a plaintiff must allege "(1) [t]he existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has

---

[3] Defendant has not moved to dismiss Plaintiff's claim for tortious interference with respect to its claim regarding Plaintiff's relationship with American Media, Inc.

been disrupted." *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (1985) (superseded by statute in other respects). Any alleged interference must have been both intentional and improper. *Id.* at 387-88, 710 P.2d at 1042-43. A plaintiff must be able to "identify a specific relationship with which the defendant interfered" to state a plausible claim for relief; the speculative hope of a business expectancy is not enough. *Dube v. Likins,* 216 Ariz. 406, 414, 167 P.3d 93 (Ct. App. 2007).

Plaintiff has only conclusorily asserted that it would have earned business at the Mr. Olympia Weekend Expo if it had been allowed to exhibit there. Such an allegation is insufficient to state a claim for tortious interference with business expectancy. Plaintiff identifies customers that attended the Mr. Olympia Weekend Expo as the individuals with whom it would have formed business relationship absent Defendant's alleged interference. However, these allegations do not rise beyond the "mere hope" of a business expectancy, nor can Plaintiff sufficiently show that it suffered any specific loss because of Defendant's alleged interference. *See Dube*, 216 Ariz. 412-13 (noting a "claim for tortious interference with a business expectancy is insufficient unless the plaintiff alleges facts showing the expectancy constitutes more than a mere 'hope'" (citing *Marmis v. Solot Co.,* 117 Ariz. 499, 502, 573 P.2d 899, 902 (Ct. App. 1977)).

Plaintiff's reliance on *Antwerp* and *Edwards* is misplaced. In *Antwerp*, the court held that the defendant's publication of defamatory reports about plaintiff's business would likely have deterred potential customers and therefore supported a claim for tortious interference. 130 Ariz. 523, 530, 627 P.2d 733, 740 (1981). In *Edwards*, the court held that defendant's interference in contract negotiations between plaintiff and a third party for the purchase of plaintiff's mining claims supported a claim for tortious interference because there was a specific, identifiable relationship with which defendant had interfered, even though no contract was actually formed. 115 Ariz. 313, 314, 565 P.2d 190, 191 (Ct. App. 1997). Here, while Plaintiff certainly intended to form business relationships with the customers at the expo, whether Plaintiff actually would have made

a profit or entered into any contract with customers at the weekend expo is too speculative to form the basis for an independent tortious interference claim. *See Soilworks, LLC v. Midwest Indus. Supply, Inc.,* 575 F.Supp.2d 1118, 1128 (D. Ariz. 2008) (noting speculative damages that cannot be established with reasonable certainty may not form the basis for a tortious interference judgment).  Further, to the extent Plaintiff can establish any damages related to potential business expectancies it would have yielded had it been permitted to attend the weekend expo, these will be recoverable under Plaintiff's claim for tortious interference with its contract with American Media, Inc., which Defendant has not moved to dismiss.  Accordingly, Defendant's motion to dismiss Plaintiff's claim for tortious interference with its prospective business relationships with customers at the Mr. Olympia Weekend Expo will be granted.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, and 11 of Plaintiff's First Amended Complaint (Doc. 39) is denied as to counts 1, 2, 3, 4, 5, 6, 7, 8, and 9, and granted as to count 11 to the extent Plaintiff alleges interference with business expectancy of relationships with consumers at the Mr. Olympia Weekend Expo.  Count 11 is dismissed as directed in this Order without leave to amend.

Dated this 16th day of May, 2012.

_____
Neil V. Wake
United States District Judge

- 11 -